Dorothy CHANDLER, Plaintiff-Appellant,

v.

Velma GORDA, Defendant-Respondent.

No. 50643.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for appellant.

Hocker, Goodwin & MacGreevy and John M. Goodwin, St. Louis, for respondent.

HENLEY, Judge.

Action for damages of $30,000 for personal injuries allegedly received by plaintiff in a one-car accident. The trial resulted in a verdict for the defendant and plaintiff appeals from the ensuing judgment.

Plaintiff assigns as error (1) that the court erred in refusing to sustain and in overruling plaintiff's motion for a directed verdict at the close of all the evidence and (2) that the court erred in admitting into evidence defendant's exhibits 1, 2, 3, 4, 5, 6, and 8, being photographs of a bridge at the scene of this occurrence.

On the afternoon of October 30, 1960 the plaintiff, the defendant, a Mrs. Marie Hasty, and others, left the Hasty residence in Hillsboro in defendant's automobile enroute to the farm of plaintiff's daughter in Washington County, approximately 30 miles distant, to pick apples. Defendant was driving, plaintiff was directly behind her in the back seat, Mrs. Hasty was seated in the back seat on the right holding her niece's baby and her niece and son were sitting in the front seat with defendant. Their route to the farm took them south on State Highway #21 to a point south of Caledonia, off this highway to their right onto a graveled county road for about a mile and three-quarters and again a turn to their right in a westerly direction onto a gravel road about 15 feet wide and across a wooden bridge over a dry branch about 20 feet from their last right turn to plaintiff's daughter's home approximately one-half mile distant. Plaintiff was furnishing the directions as they traveled for none of the others knew the route. In crossing this bridge at about five miles per hour the automobile fell off to its right landing on its right side at the bottom of the branch and "just off of" the edge of the bridge floor, as a result of which plaintiff was injured. The branch was about "head-high deep"; the bridge was approximately the same width of the road

and about 20 feet long. It was constructed of large size log timbers as sleepers on which was laid the bridge floor of three by six inch boards of varying uneven lengths. On top of this floor running the length of the bridge in the direction of travel were two runways each about 20 inches wide and two or three inches thick so spaced as tracks to accommodate motor vehicles. Pictures offered in evidence would indicate that it was not in the best of repair and was of a kind not commonly seen today except in marginal or wooded areas. Other facts necessary to a decision will be stated in the course of the opinion.

Plaintiff's petition alleged and the cause was submitted on the theory that her injuries resulted from defendant's negligence in so operating her automobile as to cause the same to leave the bridge and overturn under what she says were facts making the res ipsa loquitur doctrine applicable. Defendant's answer was a general denial coupled with a plea of contributory negligence, this affirmative defense not being submitted to the jury.

The plaintiff contends that the court should have sustained, and erred in overruling, her motion for a directed verdict at the close of all the evidence because, she says, under the undisputed evidence and defendant's own admissions, defendant was guilty of negligence which was the proximate cause of plaintiff's injuries. For the alleged error, she submits that the cause should be remanded to the trial court with directions to sustain the motion and enter judgment for plaintiff on the issue of liability and that the issue of damages alone be submitted to a jury.

On the question of when a verdict may be directed for plaintiff this court said in Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691, l. c. 693,

" * * * It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. Dunham-

Buckley & Co. v. Halberg, 69 Mo.App. 509; Wolff v. Campbell, 110 Mo. 114, 19 S.W. 622; Goudie v. National Surety Co., Mo.App., 288 S.W. 369, loc. cit. 374; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, loc. cit. 559. There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. Magoffin v. Missouri Pacific R. Co., 102 Mo. 540, 15 S.W. 76; Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583; Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615; Clemens v. Knox, 31 Mo.App. 185; Stephens v. Koken Barber Supply Co., 67 Mo. App. 587; Hoster v. Lange, 80 Mo.App. 234; Woods v. Moffitt, 225 Mo.App. 801, 38 S.W.2d 525; Jackson v. Security Benefit Ass'n, Mo.App., 139 S.W.2d 1014."

It is plaintiff's contention that defendant admitted in her testimony the truth of the basic facts upon which plaintiff's claim rests; that defendant has admitted that she drove the automobile upon the bridge and negligently caused the same to leave the bridge and overturn. Plaintiff refers us to the following testimony of defendant as the

basis of her conclusion that defendant admitted the truth of the basic facts of plaintiff's claim.

"Q What happened as you started across the bridge?

"A I started across the bridge and the right tire missed this—ran off of this two-board runway on top of the cross-boards, and the car started sliding, the boards broke, and we just slid off into the ditch."

\*  \*  \*  \*  \*  \*

"Q Did you talk to Sheriff Rieffer after this accident?

"A Yes, I did.

"Q Did you tell him when you turned on the bridge you missed the runway and ran off the edge of the bridge?

"A I told him the wheels slid off of those two boards onto the cross-boards.

"Q Did you tell him anything about any boards breaking?

"A I didn't have to. He could—

"Q I asked if you told him anything about any boards breaking.

"A Yes, I did.

"Q You told Mr. Rieffer the boards broke off?

"A The boards broke off when my—

"Q Did you tell Mr. Rieffer that?

"A I can't be sure whether I did or not.

"Q You remember when your deposition was taken in Mr. Goodwin's office, don't you?

"A Yes.

"Q You remember when my partner, Mr. Weier, asked how this accident happened?

"A Yes, sir.

"Q Did he ask you this question, page 9, (reading): 'Q I see. All right. After you turned off the gravel road onto this road that you said was about one car width wide, can you tell us what happened? A Well, there was this bridge that was right there on the private road as you turned off the gravel road, and I turned on the bridge and my right front tire went off this bridge and the car slid off in the ditch.' Did you tell Mr. Weier that?

"A Yes.

"Q You knew you were under oath at that time, didn't you?

"A Yes, sir.

"Q And you knew that Mr. Weier was inquiring of you about exactly what caused this accident, didn't you?

"A Yes.

"Q. You didn't say anything in that answer about any boards having broken, did you?

"A I don't know if I did or not.

"Q Another question, page 9, (reading): 'Q Now you say the right front tire went off the bridge—

"'A Well—

"Q '—and the rest of the car followed and went off on the right side? A Just slid off to the side.' Did you make that answer to that question?

"A Yes.

"Q You did not say anything there about any boards breaking, did you?

"A The boards broke off—

"Q You did not say that in answer to Mr. Weier's question, did you?

"A I don't remember."

Apparently plaintiff's position is that the basic facts of defendant's negligence admitted by the defendant are that she neg-

ligently caused, allowed and permitted the right tire to miss or run off the runway and thereby caused the automobile to slide or run off the edge of the bridge and into the ditch, or, that as she turned onto the bridge she caused her right front tire to go off the bridge and the automobile then slid into the ditch. Defendant's position is that she has not admitted the basic facts of negligence because her testimony was that boards of the bridge floor broke causing her automobile to slide or fall off into the ditch, that neither the breaking of the boards nor the resultant sliding was caused by her operation of the automobile, and she was therefore not negligent; and, that consequently she has not admitted negligence. Indicative of defendant's defense and position is the testimony of Mrs. Marie Hasty. Mrs. Hasty testified on behalf of defendant that "As the car started across it [the bridge] the boards began to break and the car, we knew it was sliding off because it gradually slid and finally it landed. The boards broke off one at a time until the car just slid off into the ditch."

■ We hold that the defendant did not by her testimony admit the basic facts of plaintiff's claim, but on the contrary she maintained and introduced evidence tending to show that she was not negligent. Consequently a question of fact existed for determination by the jury. In Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S.W. 777, 782–783 [2, 3], where the evidence was somewhat similar to that here and the defendant contended that the court erred in overruling its demurrer to the evidence, this court, in discussing the application of the res ipsa rule, held that the evidence made a case for the jury.

The court did not err in overruling plaintiff's motion for a directed verdict.

Plaintiff submits as her second assignment of error that the court erred in admitting in evidence over her objection certain photographs identified as Exhibits 1, 2, 3, 4, 5, 6 and 8 offered by defendant.

Exhibits 1 and 2 were taken approximately one month after the accident and the balance, being larger sized pictures, were taken approximately eight months later.

Plaintiff contends that these pictures do not accurately represent the bridge and its condition as it appeared at the time of the accident; that they misled and confused the jury; that they conveyed to the jury the message that repairs had been made to the bridge after the accident, thus implying that there had been substantial damage to the bridge at the time of the accident; that the jury drew an inference from these pictures that the bridge was unsafe and that its unsafe condition was what caused the accident rather than the negligence of defendant. Plaintiff's witness, Deputy Sheriff William Rieffer, identified Exhibit 1 as showing what the bridge looked like to a driver going west, but said that he did not remember the bridge as being in as damaged a condition as it is shown in Exhibits 1 and 2. Plaintiff's witness, Della Bourbon, identified Exhibits 1, 2, 3 and 4 as showing the bridge and said that her brother-in-law had made repairs to it about two weeks before this occurrence. Plaintiff testified that Exhibit 2 looked like the bridge, but that she had never seen it "in this kind of shape"; that the "background" in Exhibits 5 and 6 looked familiar, but the bridge shown did not. Defendant's witness, Marie Hasty, identified all of these exhibits as pictures of the bridge and stated that they showed the bridge in the same, or substantially the same, condition it was on the day of the occurrence, except that the bridge floor had not been patched (with two short lengthwise boards as shown in Exhibits 3, 4, 5, 6 and 8, but not shown in Exhibits 1 and 2). Defendant testified that all of these pictures represent the appearance of the bridge as it was on the day of this occurrence with the exception of the two short boards added alongside one track or runway near a hole in the bridge floor on the

opposite side of that runway. With permission of the court, defendant's counsel stated to the jury that the two short longitudinal planks appearing in the larger photographs (Exhibits 3, 4, 5, 6 and 8) do not appear in the smaller sized photographs (Exhibits 1 and 2) because the larger photographs were taken about eight months after the smaller; that the defendant does not contend that at the time of this incident those short planks were on the bridge.

Photographs properly identified and fairly representing an object and its condition immediately after an occurrence in which it is involved should not be excluded from evidence. Where photographs are taken long after the event and changes have occurred in the object they are admissible in evidence where the extent of the change is explained to the jury. The admissibility of such photographs is largely within the discretion of the trial court. Unless that discretion is abused its ruling will not be disturbed on appeal. Brock v. Gulf, Mobile and Ohio Railroad Company, Mo., 270 S.W.2d 827, 833 [8–11], and cases there cited. We do not find wherein these photographs could have misled or confused considering the evidence pertaining to them and counsel's explanation to the jury, nor do we find wherein they are subject to the complaint of plaintiff that they imply substantial damage to the bridge at the time of this occurrence. Gignoux v. St. Louis Public Service Company, Mo.App., 180 S.W.2d 784 and other cases cited by plaintiff in support of her contention that the court erred in admitting these photographs are distinguishable on the facts and are not applicable under the circumstances shown in this record.

The photographs were sufficiently identified, they were relevant and material, and there was no error in their admission.

For the reasons stated, the judgment is affirmed.

All concur.